UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FREDDY PONCE,<br><br>Defendant. | Case No. 1:15-cr-00109-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

In January 2021, this Court denied Defendant Freddy Ponce's motion for early termination of supervised release. Ponce appealed, arguing that the Court had applied an incorrect legal standard in deciding the motion. The Ninth Circuit remanded, instructing this Court to reconsider Ponce's motion and clarify the legal standard it applied in denying the motion. On remand, the Court invited supplemental briefing, which has now been filed.

For the reasons explained below, the Court will reconsider the motion and clarify the governing legal standard. Also, given the additional facts set forth in Ponce's post-remand, supplemental brief, the Court will grant the motion for early termination, which the government no longer opposes.

# BACKGROUND

## 1. The Initial Motion

In November 2015, this Court sentenced Ponce to 60 months of incarceration followed by four years of supervised release after he pleaded guilty to one count of distributing methamphetamine. On August 30, 2018, Ponce was released from prison and placed on supervised release. When he originally filed his motion for early termination, Ponce had completed just a little over half of his four-year term of supervision. He argued that early termination was justified because he had been successful in integrating back into society. Among other things: he had a job; he had married and was supporting his wife and three children; and he was very active in his church. Ponce further reported that supervision was not difficult for him, but he nevertheless wished to free himself from the "stigma and bureaucratic complexities that supervised release entails." *Motion,* Dkt. 46, at 9. More specifically, he said he wanted to move his family out of his parent's basement and freely travel with his church. *Id.* As for the move out of the basement, he said his supervised-release status was making it difficult to obtain approval from a landlord. *Id.* at 3. And regarding the ability to travel, he stated that his probation officer had, in fact, approved past travel requests, but he said early termination would allow him "to participate more easily in various outreach events organized by his church." *Id.* at 4.

The government opposed the motion. Among other things, the government argued out that: (1) when Ponce sold the methamphetamine that led to his conviction here, he was on felony probation; (2) Ponce had failed to substantiate his claim that it would be more difficult for him to obtain housing; and (3) more generally, that despite Ponce's success on supervision, his term of supervision was still appropriate and justified in light of the relevant § 3553(a) factors. Dkt. 47, at 1-2.

## 2. The Court's Decision

The Court agreed with the government and denied the motion. In denying the motion, and after laying out the governing legal standard block-quoted above, the Court made the following statements:

> Having considered the above factors, as well as the policy recommendations of the Judicial Conference, the Court is not inclined to grant this motion. To be sure, Mr. Ponce is performing well on supervision, and he is to be commended for that. Still, though, this is what is expected of defendants on supervision. The probation officers are there to help defendants do precisely what Mr. Ponce has done: put their lives back on track and become contributing members of society. This Court has repeatedly concluded that performing well – even exceedingly well – on supervision is not enough to justify early termination. The Court does not find that this case is an exception in that regard and will therefore deny the pending motion.

Dkt. 48, at 3-4.

## 3. The Appeal

On appeal, Ponce argued that this Court incorrectly required a threshold

showing of exceptional or extraordinary circumstances for early termination. He also argued that the Court failed to fully explain its decision, leaving him "utterly in the dark" as to why his motion was denied. As noted above, the Ninth Circuit remanded the case to this Court so that it could reconsider the motion and clarify the legal standard.

## ANALYSIS

### 1. The Governing Legal Standard – Clarified

When it initially considered the motion, the Court began its analysis with this paragraph, which was intended to lay out the standard governing supervised-release motions.

> The Court has broad discretion to impose terms of supervised release. *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014); 18 U.S.C. § 3583(e)(1). This includes the discretion to terminate such release after Defendant has served one year of their supervised release. *Id.* In deciding whether to terminate supervision, the courts must review a number of sentencing factors which include:
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2) deterrence;
> >
> > (3) protection of the public;
> >
> > (4) the need to provide the defendant with educational, vocational training, medical care or other rehabilitation;
> >
> > (5) the sentence and sentencing range established for the category of defendant;

(6) any pertinent policy statement by the Sentencing
Commission;

(7) the need to avoid unwarranted sentence disparities among
defendants with similar records who have been found
guilty of similar conduct; and

(8) the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)
(5), (a)(6), and (a)(7); ***United States v. Evertson*, No. 4:06-cr-206-
BLW, 2011 WL 841056, at \*2 (D. Idaho Mar. 7, 2011) (*citing
United States v. Smith*, 219 Fed. Appx. 666, 667 n.3 (9th Cir.
2007)).** However, in rendering its decision the Court shall simply
provide an explanation based on its consideration of such factors.
*Emmett*, 749 F.3d 817, at 821-22. The Court need not elaborate
unnecessarily. *Id.*

*Mem. Decision & Order,* Dkt. 48, at 2-3 (emphasis added).

The textual sentences quoted above do not contain any errors. The trouble

comes from the Court's string cite, which includes a bare citation to *United States

v. Evertson,* No. 4:06-cr-206-BLW, 2011 WL 841056, at \*2 (D. Idaho Mar. 7,

2011). *Evertson*, in turn, cites the Ninth Circuit's unpublished decision in *United

States v. Smith,* 219 Fed. Appx. 666, 667 n.3 (9th Cir. 2007).

In *Smith,* the Ninth Circuit affirmed the denial of an unopposed motion for

early termination. In so doing, the court stated that early termination is "reserved

for rare cases of exceptionally good behavior.'" 219 F. App'x at 668 (quoting

*United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). *Evertson* took that to

mean that early termination should *only* be granted in rare cases of exceptionally

good behavior. 2011 WL 841056, at *2. The Ninth Circuit has since clarified – on the appeal in this case – that *Smith* was incorrect, and that the "exceptional behavior rule as restated in *Evertson* is incorrect as a matter of law." *United States v. Ponce,* 22 F.4th at 1047 (footnote citation omitted).  The Ninth Circuit offered this explanation of *Smith's* error:

> *Smith* incorrectly attributed to the Second Circuit's decision in *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997), the proposition that early termination is "reserved for rare cases of 'exceptionally good behavior.'" In fact, *Lussier* did not interpret § 3583(e) to necessarily require a showing of exceptional behavior for early termination of supervised release. Rather, the Second Circuit correctly described the district court's authority to modify the terms and conditions of supervised release under § 3583(e) and observed that changed circumstances such as "exceptionally good behavior by the defendant" *may warrant* termination of supervised release.

*Id.* (internal citations omitted). In other words, changed circumstances or exceptional behavior is not *required,* but nonetheless *may* warrant, early termination.

With this clarification to the governing legal standard, the Court will reconsider Ponce's motion. Before doing so, though, the Court will set forth some additional principles that guide the decision:

*First,* "It is defendant's burden to establish that he is entitled to the rarely-granted remedy of early termination of supervised release." *Emmett,* 749 F.3d at 824 (Nguyen, dissenting on other grounds) (citing *United States v. Weber,* 451

F.3d 552, 559 n.9 (9th Cir. 2006)).

*Second,* in deciding these motions, a "district court need not give an elaborate explanation of its reasons for accepting or rejecting [a defendant's] arguments, and it 'need not tick off each of the [relevant] § 3553(a) factors to show that it has considered them.'" *Id.* at 821-22 (citations omitted). Nevertheless, "[t]he record as a whole . . . must contain an explanation that would permit meaningful appellate review and justify the court's conclusion in light of the parties' nonfrivolous arguments and the legal standard." *Id.* (citation omitted).

## 2. Reconsideration of Ponce's Initial Motion

Having clarified the governing legal standard and again having considered all of the relevant § 3553(a) factors, as well as the policy recommendations of the Judicial Conference, the Court is still not persuaded that early termination was warranted when it initially confronted the motion. *See generally* 18 U.S.C. § 3583(e)(1).

As a threshold matter, the Court will clarify that in deciding the motion the first time, the analysis was not tainted by the use of an incorrect standard. Granted, the citation to *Evertson* and *Smith* confused matters – and the Court acknowledges that, based on *Smith* and *Evertson,* it may have *required* exceptional circumstances

in deciding other early-termination motions.[1] But the Court did not require such a

showing here, although the following language (taken from the Court's earlier

decision in this case) didn't help matters:

> This Court has repeatedly concluded that performing well – even
> exceedingly well – on supervision is not enough to justify early
> termination. The Court does not find that this case is an exception
> in that regard and will therefore deny the pending motion.

Dkt. 48, at 4.

That language should have been better, because it starts to sound like the

Court was *requiring* Ponce to prove exceptional behavior to show that he is

entitled to the remedy of early termination. But that was not the Court's intended

meaning. Rather, given the facts of this case, the Court was attempting to explain

that, notwithstanding Ponce's excellent behavior on supervision, early termination

was not warranted.

In reaching that decision, the Court's written decision focused primarily on

Ponce's behavior on supervision – his "history and characteristics" – because that

was the central thrust of Ponce's motion. Although Ponce made passing,

generalized mention of some of the § 3553(a) factors (e.g., deterrence, protection

---

[1] The Court will independently review its recent decisions on early-termination motions. If this review reveals that the Court applied an incorrect standard to any motion – by *requiring* a showing of exceptional circumstances – it will sua sponte reconsider that motion if the defendant is still on supervised release.

of the public, rehabilitation) as well as the Judicial Council Policy Statements, his key factual argument focused on his behavior. He also highlighted the fact that he wished to be relieved from supervision so that he could move out of his parent's basement and travel with his church.

Ultimately, the Court was not – and still is not – persuaded by these arguments. First, regarding the argument that early termination would have allowed Ponce to move out of his parent's basement and travel with his church, this argument was vague and non-specific. The Court believed Ponce would be able to do both things while remaining on supervision. And that turned out to be correct. In his supplemental briefing, Ponce reported that while on supervised release, he was able to move out of his parent's basement and travel to Utah with his church.

Otherwise, to Ponce's larger, more generalized point that supervision no longer serves to accomplish § 3553(a) goals such as deterrence, protection of the public, and rehabilitation of the offender, the Court again disagrees. Just because a person is performing well (even exceptionally well) on supervision does not automatically lead to the conclusion that supervision is no longer necessary to protect the public. Rather, supervision may itself motivate a supervisee to be a law-abiding citizen, and that was the Court's conclusion here, given the specific facts of Ponce's case. That is what drove the Court to make this statement in its initial

order: "The probation officers are there to help defendants do precisely what Mr. Ponce has done: put their lives back on track and become contributing members of society." Dkt. 48, at 3-4.

For all these reasons, on reconsideration, the Court would reach the same conclusion it reached earlier – early termination was not warranted in January 2021 when the Court first issued its decision.

3. **New Facts**

But in the intervening 15+plus months, things have changed. The most significant new fact, from the Court's perspective, is that at the three-year mark (in August 2021), the U.S. Probation Office moved Ponce to its "administrative" or "low-risk" caseload. Additionally, the government no longer opposes Ponce's request for early termination.

Ponce explains that, according to his probation officer, an individual is placed on low-risk, or administrative, status only after the probation officer (and the probation officer's supervisor) are satisfied that the supervisee's conduct warrants this placement. At this point, then, Ponce is no longer subject to drug testing and he does not receive treatment or services directly through the U.S. Probation office. Likewise, Ponce is typically not asked to report in person to the probation office, and he is not subject to unannounced home visits.

The above facts, combined with Ponce's perfect record on supervision for

the past three-plus years, persuade the Court that early termination is now

warranted. On reconsideration, the Court will therefore grant the motion.

## ORDER

**IT IS ORDERED that** Defendant Freddy Ponce's Motion for Early

Termination of Supervised is **GRANTED.**

DATED: April 22, 2022

B. Lynn Winmill
United States District Judge